1

 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3

 4   UNITED STATES OF AMERICA,        ) CRIMINAL NO. 04-00401HG
                                      )
 5                  Plaintiff,        )
                                      )
 6        vs.                         )
                                      )
 7   (03) ARNOLD C. ARRUIZA,          )
                                      )
 8                  Defendant.        )
     ─────────────────────────────────)

 9

10

11                  TRANSCRIPT OF PROCEEDINGS

12            The above-entitled matter came on for hearing on

13   Monday, November 21, 2005, at 11:00 a.m., at Honolulu, Hawaii,

14   BEFORE:          THE HONORABLE HELEN GILLMOR
                      United States District Judge
15
     REPORTED BY:     STEPHEN B. PLATT, RMR, CRR
16                    Official U.S. District Court Reporter

17   APPEARANCES:     THOMAS MUEHLECK, ESQ.
                      U.S. Attorney's Office
18                    300 Ala Moana Blvd., Suite 6100
                      Honolulu, Hawaii  96813
19
                                  Attorney for the Government
20
                      MARY ANN BARNARD, ESQ.
21                    P.O. Box 235520
                      Honolulu, Hawaii  96823
22
                                  Attorney for the Defendant
23

24

25

```
 1   MONDAY, NOVEMBER 21, 2005                          11:00 A.M.

 2                          -ooOoo-

 3          THE CLERK:  Criminal Number 04-401, defendant number

 4   three, the United States of America versus Arnold C. Arruiza.

 5          This case is called for sentencing to Count One of

 6   the indictment, and hearing on motions for downward departure.

 7          MR. MUEHLECK:  Tom Muehleck with Special Agent of

 8   the FBI Joel Rudow, for the United States.

 9          Good morning, Your Honor.

10          THE COURT:  Good morning.

11          MS. BARNARD:  And, good morning, Your Honor.

12          Mary Ann Barnard on behalf of Arnold C. Arruiza.  He

13   is present in court.

14          THE COURT:  Good morning.

15          Mr. Arruiza, have you reviewed the presentence

16   report with your attorney?

17          (Discussion off the record.

18           between defendant and counsel.)

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Thank you; you may be seated.

21          Now, Ms. Barnard, I want to be clear, in terms of

22   the record:  You have moved to withdraw your motion to allow

23   the defendant to withdraw his guilty plea?

24          MS. BARNARD:  That's correct.

25          THE COURT:  Okay.
```

1          Let me just say for the record -- because I don't

2     want this coming back -- I would have denied it.  So I don't

3     want that to be unclear in the record.  I do not believe that

4     there were grounds to show that he was anything other than a

5     knowing and voluntary plea giver.  He understood, I believe,

6     what was going on; that the judge asked the appropriate

7     questions; and I do not believe there was a reason to withdraw

8     it.

9               MR. MUEHLECK:  (Standing.)

10              THE COURT:  Mr. Muehleck?

11              MR. MUEHLECK:  Your Honor, since I was outside the

12     court when the colloquy the court had with the defendant on

13     that, would you ask the defendant, to make sure that was his

14     decision to withdraw that motion, withdraw the pleas,

15     Your Honor?

16              THE COURT:  Okay.

17              Mr. Arruiza, earlier you made a motion to withdraw

18     your guilty plea.  And now, Ms. Barnard indicates that you

19     wish to withdraw that motion to withdraw your guilty plea.

20              Is that your decision?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  Okay, thank you.

23              MR. MUEHLECK:  Thank you.

24              THE COURT:  Okay.

25              Now, let's turn to the sentencing.

4

```
 1              MS. BARNARD:  Your Honor, excuse me.

 2              THE COURT:  Yes?

 3              MS. BARNARD:  I do have a preliminary matter with

 4   respect to the PSI.

 5              THE COURT:  Well, why don't you sit down,

 6   Mr. Arruiza.  That's where we're going right now.

 7              MS. BARNARD:  Okay.

 8              THE COURT:  I have difficulty with your name.  Would

 9   you pronounce it again for me?

10              MS. BARNARD:  "Barnard."

11              THE COURT:  As in the college?

12              MS. BARNARD:  Exactly.

13              THE COURT:  All right.  I have a graduate, so...

14              But some people pronounce it differently.

15              What I am asking for now are objections to the

16   presentence report.  So if there is anything that you have,

17   that you object to in the presentence report, or a correction

18   that you believe you should make, this is your opportunity to

19   do so.

20              MS. BARNARD:  Well, I have a very minor correction.

21   One of Mr. Arruiza's children's name is misspelled.  It's

22   Jaclyn, J-A-C-L-Y-N, without a K.  That would be Page 16.

23              THE COURT:  Okay, that is corrected.  Anything else?

24              MS. BARNARD:  Yes, there's another amendment I wish

25   to make based upon new information.  That would be item 47
```

1   under "pending charges."  And I wish to submit a letter to the

2   court.

3           What happened was, that item reflects that

4   Mr. Arruiza had outstanding bench warrants in district court

5   on Maui.  And his prior counsel, Lane Takahashi, enlisted the

6   Public Defender over there to -- on a motion to recall those

7   warrants.  And I have a letter from the deputy Public

8   Defender, Jennifer Eng, E-N-G, reflecting that she did appear

9   on the motion to recall, the warrants were recalled; however,

10  the judge would not convert outstanding fines to -- and

11  community service to concurrent jail time.  So he will have

12  outstanding fines on this case.  The community service was

13  converted to fines, but he will no longer have any outstanding

14  warrants.

15          So I wanted to submit this letter to the court and

16  move to strike item 47 and place the new information regarding

17  the current status of those cases under other arrests.

18          THE COURT:  I thought you said 47, rather than 48?

19          MS. BARNARD:  Right.  Item 47, I'm moving to strike

20  that, and based upon the new information that he no longer has

21  outstanding warrants, that the information should be included

22  under other arrests.

23          THE COURT:  Well, I think it would be more

24  appropriate to leave 47 in and add the new information,

25  because it's not that 47 is untrue, it's just that there have

1    been further developments.

2                MS. BARNARD:  Yes.

3                THE COURT:  So we'll take the letter, and we will

4    include it as a new development.  You can give it to

5    Mr. Hisashima.

6                Do you have a copy of it, Mr. Muehleck?

7                MR. MUEHLECK:  Yes.

8                THE COURT:  Okay, if you would give that to

9    Mr. Hisashima, Ms. Barnard.

10               MS. BARNARD:  Thank you, Your Honor (tendering

11   document to the courtroom manager).

12               THE CLERK:  (Tendering same to the court.)

13               THE COURT:  (Perusing same.)

14               Okay, we will file that and make it an addendum to

15   the presentence report.

16               Okay, now, any objections, Ms. Barnard, to the

17   presentence report, other than the ones that you have put

18   forward?

19               MS. BARNARD:  No, Your Honor.

20               THE COURT:  Okay.

21               Mr. Muehleck?

22               MR. MUEHLECK:  No, Your Honor, not in light of the

23   court's rulings the last time we were here, in response to our

24   objection at that time.  No.

25               THE COURT:  Okay.  But Ms. Barnard was not here, and

1    I want the record to be clear.

2         What I ruled, Ms. Barnard, was that the Probation

3    Office was incorrect in their calculation with respect to the

4    7 grams as opposed to 50 grams, and the court finds that their

5    calculations are incorrect because of that.  And I believe the

6    transcript makes that clear, from the last hearing.

7         MR. MUEHLECK:  Yes, Your Honor.

8         THE COURT:  Is there anything that you want to say

9    about that, Ms. Barnard?

10        MS. BARNARD:  Your Honor, rather than to continue to

11   argue that point, I believe it's in the record that there are

12   two different viewpoints.  I would just like the court to

13   consider my motion for downward departure in which I address

14   that.  And I'm asking the court to depart downward to -- more

15   in tune with what is the PSI calculation.

16        THE COURT:  Okay, so to state where we are, I have

17   ruled previously in the hearing that was held on August 29,

18   2005, with respect to the government's objection.  And so the

19   advisory guidelines, which the court has indicated are of

20   value to the court because they provide for a means of

21   continuity of sentencing across the country, the Sentencing

22   Commission provides policy positions and points out particular

23   statistics and factors to be considered in the particular

24   charge and for a particular defendant, and all of those things

25   are helpful to the court, so the court considers the advisory

1    guidelines.

2         And the advisory guidelines here would be 34, minus

3    the 3 points for acceptance of responsibility, so he would be

4    a 31 criminal history category -- 31, with a criminal history

5    category of 5, which gives him 168 to 210 months range, but

6    there is a mandatory minimum given his record of 240 months.

7    The fine range would be $15,000 to $8 million.  And the

8    supervised release, I believe, would remain the same:  Eight

9    years.  And of course there is a $100 special assessment, and

10   restitution isn't applicable.

11        Okay, now, this is your opportunity -- and I have

12   received letters and pictures on behalf of the defendant,

13   which I have reviewed and will take into account.

14        Now, Ms. Barnard, this is your opportunity to speak

15   to sentencing, and the motion for downward departure filed by

16   the government.

17        MS. BARNARD:  Thank you, Your Honor.

18        We are asking that the court find that a seven-level

19   downward departure from the court's finding of level 31 would

20   be warranted in this case as the amount of time that would be

21   necessary for the protection of the public.  And the other

22   factors that the court has to consider.

23        First of all, I do appreciate the government's

24   willingness to recommend the decrease in the departure that

25   they have based upon substantial assistance.  And I submit

1    that the court should depart downward from there because,

2    basically, Your Honor, that would be 13 and a half years under

3    the government's recommendation, and Mr. Arruiza, being 38

4    years old right now, would be in his early fifties.  Early

5    fifties is not frightening for some of us here, but for

6    somebody 38 years old, it's very discouraging.

7            Basically, Mr. Arruiza has made a significant effort

8    and a showing that he's motivated, and that he desires to

9    change.

10           Basically, Your Honor, as opposed to some other

11   defendants in Mr. Arruiza's situation, I have had a chance to

12   work with him, and I can tell the court that Mr. Arruiza has a

13   conscience.  He really cares about other people.  He has the

14   capacity to care about other people.  He has the capacity to

15   realize that he's hurt other people.  And he does express that

16   in his letter to the court.

17           Your Honor, I believe he's taken some steps

18   necessary toward his own rehabilitation.  As you can see, all

19   of his certificates, communication in writing, parenting --

20   two classes in parenting -- substance abuse, physical fitness.

21   These things are very fortunately made available in the local

22   federal detention facility, and not all defendants take

23   advantage.  But he has been taking full advantage of those

24   opportunities, and he's learned a lot.

25           The letter he wrote for the court, he said it took

1   him a long time to write that, many, many rewrites, and he did

2   do well in his communication and writing class, and he's

3   really made a substantial effort to try to better himself.  He

4   knows that in order to protect the public by staying out of --

5   well, preventing himself from relapsing has basically been a

6   recurring problem with him.  Although he's had substantial

7   periods where he was drug-free, he's always had relapses,

8   always gotten in trouble.  And so to prevent this from

9   happening in the future, of course, a substantial term in jail

10  is probably warranted for the public's protection, but 13 and

11  a half years, we submit, would be too much.  He's motivated to

12  change because of his family ties.  As the court can see from

13  the pictures and the letters from his children, he does stay

14  involved with them.

15          When I first read the PSI, when I first got this

16  file, I was a little bit discouraged to see that he had seven

17  children by four different women.  And on the surface that

18  looks very bad.  But then when you find out that these

19  children are doing well, well cared for, and he makes every

20  effort to stay involved with them.  And it's just very tragic

21  that we are here today, that he can't be in their lives more.

22  But he's taking advantage of the courses to help him to be

23  involved in their lives.  And when we come to the end of this

24  sentencing, I can make a request that he can be closer to his

25  children.

1          Basically, he knows he needs intensive, highly

2   structured substance abuse treatment of the most intense

3   variety.

4          Your Honor, I've also addressed that we do not

5   believe that the upward adjustment for being a manager is

6   warranted.  Or, in the alternative, that his managerial role

7   was so minimal that the court should depart downwardly from

8   that, that two-level increase, too.

9          So I do have a witness that I want to present on

10  that.  That would be Agent Joel Rudow.

11          THE COURT:  Okay, Ms. Barnard, here's how it works:

12          I ask at the beginning about any objections to the

13  presentence report.  And the presentence report is what has to

14  do with the manager points.

15          I have already made the findings with respect to the

16  manager points.  I have already announced -- and asked you if

17  you had any objection to that calculation.  And you said no.

18  Now, at sentencing, when you're talking about sentencing, you

19  have a witness you want to put on about an issue that has been

20  decided earlier in this proceeding.  So I'm a little confused.

21          The way it works is, we deal with, up front, what

22  the calculations are going to be.  And we've already done

23  that.  Now you are attacking the calculations.  I don't know

24  if you are attacking them with the idea of you just think that

25  it is wrong and shouldn't be there, or if you are saying that

1    it's part of the downward departure.

2            Basically, it's out of order at this point, and I'm

3    not quite sure what you're asking.  It goes, are we going to

4    accept the report or not?  What are the objections?  I make

5    findings, and then we move on to the sentencing portion.  But

6    we seem to have done that, and now we're going back.  So what

7    is it you want to do?

8            MS. BARNARD:  Yes, I apologize for that, Your Honor.

9            Well, I stated two alternatives in my memorandum.  I

10   guess what I want to do at this time is try to mitigate that

11   managerial role in support of downward departure.

12           THE COURT:  I am willing to reopen if you want to

13   reopen because you were unclear about how this was proceeding.

14   I'm not trying to tell you what you ought to be doing.  I am

15   just trying to put it into an orderly context so I can make a

16   decision and make the proper findings after I make a decision.

17   But if I don't have the information before I make the

18   decision, as to how I am treating the PSI, uh -- so I am not

19   trying to change your theory, I am just trying to put it in a

20   structure that allows me to make decisions with all of the

21   information before me.

22           MS. BARNARD:  Frankly, Your Honor, I had my mind so

23   concentrating on drug quantity and that level increase that I

24   sort of omitted to bring this up as a separate category,

25   attacking the PSI.

1          So, if the court will allow me to reopen --

2          THE COURT:  Sure.

3          MS. BARNARD:  -- I'd like to do it that way.

4          THE COURT:  Okay.

5          And who is it that you want to call?

6          MS. BARNARD:  Special Agent Joel Rudow.

7          MR. MUEHLECK:  My case agent, Your Honor.

8          THE COURT:  Oh, okay.

9          MR. MUEHLECK:  Well, may the government be heard,

10  Your Honor?

11          THE COURT:  Yes.

12          MR. MUEHLECK:  First of all, Agent Rudow was served,

13  and we told him to come over here, of course.  He was served

14  to come here.  The 28 CFR, Section 1623, requires, of course,

15  the defendant, when they seek information from a Department of

16  Justice employee, or when the Department of Justice is a

17  party, is supposed to give us an affidavit about what they are

18  going to testify about, or what they are going to ask the

19  witness to testify about.  The Touhey regulations, we call

20  them.

21          And rather than delay this, we told the agent to

22  come over.  I am required to report that to their regional

23  counsel, their local counsel.  I did.  We agreed to have Agent

24  Rudow over here, so I think there should be a proffer.  Even

25  in the long and short of this, Judge, how can the defendant

1    back out of a manager role when he admitted this in the plea

2    agreement, that he instructed Mary Vanderbilt, his girlfriend,

3    to make two trips from Maui, to go over from Lana'i to Maui,

4    to pick up the stuff and come back.  I mean, isn't this a

5    nice, I guess argument, philosophical argument here?  Because

6    he's admitted these things in the plea agreement under oath.

7            That's where we are, Judge.  I have the agent here,

8    Your Honor.

9            THE COURT:  Yes.

10           Ms. Barnard?

11           MS. BARNARD:  An offer of proof, Your Honor?

12           THE COURT:  Well, he's right.  There is a way you're

13   supposed to call a government agent, and you haven't done it.

14   It's a regulation.  It's a means of them having the ability to

15   consult with the attorney and have an agency position with

16   respect to how they proceed.  It makes sense.  It's somewhat

17   burdensome, but it exists in this context because you are

18   asking somebody who represents an agency to take the stand,

19   and they should have the right to talk to their counsel, as

20   well.

21           And Mr. Muehleck has done the catch-up for you, but

22   he would be well within his rights to say, he hasn't been

23   properly called.  So you need to deal with that.

24           Okay, now, what is it that is your offer of proof?

25           MS. BARNARD:  My offer of proof is that he would be

1  able to testify that Arnold's involving his girlfriend was

2  toward the end of this transport back and forth of the drugs.

3  And the overall majority of it was done by himself; that she

4  really didn't have an employer-employee or an underling type

5  of relationship.  She was very heavily involved with drugs,

6  herself, and she was willing to do it.  She didn't make any

7  special trips.  She was a frequent traveler back and forth

8  anyway.

9          So I'm trying to show that the factors are somewhat

10  similar to the McGregor case, and that Mr. Arruiza's role in

11  this conspiracy did not significantly change.  He wasn't

12  really in an employer-employee relationship with her in the

13  usual conspirator sense.  In other words, a boss-employee

14  relationship.  It's more that they were mutually users of the

15  drugs, and it was more of a mutual thing than...

16          And the way Mr. Rudow -- or Agent Rudow worded it in

17  his report, which is attached to my sentencing memorandum, was

18  that he had her transport the drugs.  He doesn't use the word

19  "ordered" her.  So I believe he can clarify the details of

20  that somewhat.

21          THE COURT:  Well --

22          MR. MUEHLECK:  Government response?

23          THE COURT:  Yes.

24          MR. MUEHLECK:  Well, I'll stipulate that he would

25  say a lot of this, except he can't make the employee-employer

1    determination, Judge.

2           This is a guideline provisions legal definition that

3    Agent Rudow can't make.

4           I'll stipulate that he asked her to do it; that they

5    were boyfriend/girlfriend; that they were using drugs; and

6    that the two trips may have been at the end of the

7    conspiracy -- is that correct?

8           AGENT RUDOW:  Yes.

9           MR. MUEHLECK:  Agent Rudow indicates that's true.

10          But the issue of supervisor, director, or organizer,

11   Judge, in that connotation, the witness can't answer, and

12   we'll go with it from there.  Plus, that information that he

13   made some of the trips himself, or most of the trips himself,

14   that's in the plea agreement.  That's represented in the

15   presentence report, I believe.

16          THE COURT:  Okay.

17          Taking everything that you have represented,

18   Ms. Barnard, I don't see how that is going to change the

19   structure.  The fact that someone is a girlfriend, as well as

20   a person who is in the structure of the drug distribution,

21   it's very common for people to have relations:  They have

22   brothers, they have wives, they have other relations.  That

23   isn't significant, in terms of a structure as to why somebody

24   does something.  They are still taking orders, and they are

25   still carrying out the orders.

1          So you haven't properly subpoenaed him, and the

2   government has accepted your proffer as true.  I accept your

3   proffer as true.  We're not going to hear from the agent on

4   both those bases:  One, we don't need to, and, two, he wasn't

5   properly subpoenaed.  So I am denying your objection to the

6   presentence report.

7          And just to be sure that we are totally clear here,

8   the court adopts the factual statements contained in the

9   presentence investigation report, but it is modified by the

10  statements the court made previously with respect to the

11  calculations because the court is not in agreement with the

12  Probation Officer's statement that the defendant did not admit

13  to the 50 grams.  The judge asked him directly if it was 50

14  grams of methamphetamine, its salts, isomers and salts of its

15  isomers?  And he responded, yes.  It was a clear question and

16  a clear answer.

17         And the fact that later he talked about a particular

18  seven grams does not change the fact that he admitted in the

19  plea colloquy to the 50 grams.

20         As for the objection with respect to his supervisory

21  role, I believe there are sufficient facts here to find a

22  supervisory role, and I so find.

23         And so the presentence report, as modified by the

24  court, is placed in the record under seal.  If an appeal is

25  taken, counsel, on appeal, may be permitted access to the

1  sealed report, with the exception of the "recommendations"

2  section.

3          The court accepts the plea agreement because it is

4  satisfied that the agreement adequately reflects the

5  seriousness of the actual offense behavior, and that accepting

6  the plea agreement will not undermine the statutory purposes

7  of sentencing.

8          And the statements made previously by the court,

9  with respect to the guidelines, as calculated by the court,

10  remain in effect.

11          Now, uh --

12          MS. EVERSOL:  Your Honor, if I may, real quick?

13          The supervised release range is altered, so it

14  should be ten years, instead of -- is the guideline range.  I

15  believe you initially said eight years.  And it is changed due

16  to the statutory change.

17          THE COURT:  Thank you.  That is of assistance.

18          MR. MUEHLECK:  That's right.

19          THE COURT:  The supervised release range is ten

20  years.  Okay.

21          Now, Ms. Barnard, you may speak to sentencing in

22  general at this point.

23          MS. BARNARD:  Okay, thank you, Your Honor.

24          Well, the court has indicated that it has had a

25  chance to review all of our submissions, so I won't repeat all

1    of that.

2            Other than the amount of jail time, I am going to

3    leave it -- the period of supervised release, and that sort of

4    thing, to the court's discretion, acknowledging that a lengthy

5    period of supervised release would probably be appropriate in

6    this case.

7            THE COURT:  What is the exact figure you are asking

8    for?

9            MS. BARNARD:  For supervised release?

10           THE COURT:  No, for the --

11           MS. BARNARD:  Okay, the exact figure is 92 months.

12           THE COURT:  Okay, thank you.

13           Is there anything else you wanted to say?

14           MS. BARNARD:  I believe I pretty much covered

15   everything, and I would just ask that the court allow

16   Mr. Arruiza, himself, to address the court.

17           THE COURT:  Okay.

18           I am afraid that we have to cut this short.  I have

19   an engagement that I must be on time for, so we will reconvene

20   at 2:00, if that's okay with everyone -- or 2:30.

21           MR. MUEHLECK:  2:30.

22           THE COURT:  2:30.

23           MR. MUEHLECK:  Yes, ma'am.

24           THE COURT:  And we will then hear from Mr. Arruiza.

25           We stand in recess.

```
1              THE CLERK:  Please rise.

2              Court stands recessed until 2:30 p.m.

3              (A recess was taken at 11:37 a.m.)

4                         - - -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   AFTERNOON SESSION                                     2:30 P.M.

 2                              - - -

 3            THE COURT:  Okay, we're back on the record with both

 4   counsel and the defendant.

 5            Were you here before?

 6            MR. MUEHLECK:  No, Your Honor.

 7            MR. YOSHIHARA:  No, Your Honor.  I'm sorry --

 8            THE COURT:  Malia was here.

 9            MR. YOSHIHARA:  Yes, Your Honor, she was.

10            THE COURT:  Okay, please be seated.

11            Now, I believe that we have gone through -- and you

12   had said what you wanted to say, Ms. Barnard, but if you have

13   anything else you want to say, since that was the point which

14   we left off and we were about to hear from the defendant.  But

15   if there's anything else you want to say, you may do so,

16   before we move on to the defendant.

17            MS. BARNARD:  Nothing further, Your Honor.

18            THE COURT:  Okay, thank you, then.

19            Let's hear from the defendant.

20            Mr. Arruiza?

21            THE DEFENDANT:  Yes, Your Honor.

22            Well, I had a million and one things to say, but I

23   just want to keep it short and say that I'm sad that all this

24   had to happen this way.  I'm just sorry that I'm not there for

25   my kids and my mom that has cancer.  I'm ready to put all this
```

1   behind me and learn from it.

2           That's all I got to say.

3           THE COURT:  Thank you.

4           Mr. Muehleck?

5           MR. MUEHLECK:  Your Honor, we have a motion for

6   downward departure, based upon the defendant's substantial

7   assistance with the United States -- federal authorities, I

8   should say, under 5K of the sentencing guidelines.  And I

9   would like to address that now, if I could?

10          THE COURT:  Yes.

11          MR. MUEHLECK:  Your Honor, basically, the defendant

12  cooperated with the United States at the time of his arrest

13  and gave information leading to information that corroborated

14  what the United States pretty much had over the wire tap; that

15  Mr. Keahi, whom the court will remember as the older Hawaiian

16  gentleman from Maui, who was represented by Mr. Lowenthal,

17  verifying that he was supplying drugs -- Keahi was supplying

18  drugs that he got from Sham Vierra to the defendant, which

19  then went over and were distributed on Lana'i.

20          The defendant admitted that, provided information,

21  and would have been a witness against Mr. Keahi if he went to

22  trial.  Mr. Keahi of course, did not go to trial.  We made it

23  known that Mr. Arruiza would testify, and then Mr. Lowenthal

24  pled Mr. Keahi.

25          And we mentioned Ms. Vanderbelt in there.  Well, the

1    defendant did initially provide information about his

2    girlfriend, Mary Vanderbelt, and then sort of went sideways on

3    us and said, well, you know, she did that only because I

4    forced her to do that.

5          And of course, that was not the case.  He was

6    protecting her.  And I took the change of plea of

7    Ms. Vanderbelt before the magistrate, and Jack Schweigert, her

8    attorney, and that didn't happen.  She under oath admitted

9    that she knew what was going on, was not threatened to do

10   that, and she did that.

11         So while we mentioned he did provide information

12   about Ms. Vanderbelt, he was not a real good witness for the

13   United States against Ms. Vanderbelt, and that's where

14   Mr. Keahi got credit, as the court is well aware.  So we're

15   not double counting there, both for Mr. Vanderbelt -- against

16   Ms. Vanderbelt with Keahi and the defendant; it was mostly

17   Mr. Keahi.  But the information that he provided to us was of

18   assistance.

19         We note in a footnote that the defendant had two

20   prior drug felonies, and we didn't triple bill him, so to

21   speak; we filed one sentencing enhancement.  And, frankly,

22   Judge, the defendant's criminal history is very bad.  The

23   offenses are bad.  It's drug offenses.  It's abuse offenses.

24   There's lack of responsibility, personal responsibility, on

25   his part with the family, etc., etc.

1          They say, well, the defendant's children are doing

2     well.  Maybe that's because they are not with the defendant,

3     they're with someone else.  There's some bad stuff here in the

4     presentence report.  The court is well aware of that.

5          But the defendant cooperated.  The defendant's

6     information was of assistance to the United States.  We have

7     recommended a downward from 240 to 162.  We leave that within

8     the discretion of the court.  We don't think we are being

9     cheap here.  We didn't triple bill him, or he would have

10    started out at life.

11         The defendant tried to withdraw his plea.  There's

12    been a lot of different stuff here, Judge.  Thank you.  We'll

13    leave it within the discretion of the court.

14         THE COURT:  What about Mr. U'u?  Because we gave him

15    140 months.

16         MR. MUEHLECK:  I understand that, but Mr. U'u, of

17    course -- Mr. U'u is looking at a Rule 35, judge.  He's square

18    in the face of a Rule 35.  I am sure he is very happy with

19    that, and I'm sure Mr. Ching is very happy with that, because

20    he would have testified against Mr. Tolbert.  And Mr. Tolbert

21    is set for pretrial on Wednesday, and change of plea scheduled

22    for Tuesday, the 29th.  So I think Mr. U'u is going to get the

23    benefit of his position.  Mr. U'u had a bad record, too.  And

24    I don't have that in front of me, but there was -- there were

25    no drugs on that, I don't believe, it was just a terrible

1  record of every other thing with Mr. U'u.  And he cooperated,

2  he'll do something, and he's looking at a Rule 35 now.  I am

3  going to recommend that to my section head, and I'm sure that

4  will happen.

5           If the court has any particular question vis-a-vis

6  that --

7           THE COURT:  No, I just wanted your comment.

8           MR. MUEHLECK:  No, that's what's gonna happen, Your

9  Honor.

10          THE COURT:  Okay, thank you.

11          MR. MUEHLECK:  Thank you.

12          THE COURT:  At this time I will state the sentence I

13  intend to impose, and the attorneys will have a final

14  opportunity to make an objection, legally speaking.

15          Now, this is a defendant with, as Mr. Muehleck has

16  just said, a bad record.  And that's very important.  The fact

17  that this is the third conviction for drugs is of concern to

18  this court.  And that means that that has to be taken into

19  account.

20          In addition, the defendant has other serious law

21  violations, and those are being counted.  There is the

22  violation with respect to abuse of a household member in '96;

23  there's the violation of a temporary restraining order; then

24  there's the violation of an order for protection; then there's

25  the promoting dangerous drugs in '96; and then in 2000,

1    there's a terroristic threatening in the second degree; and

2    then in '02, there is distribution of a controlled substance.

3              Now, in addition, there are a number of other

4    smaller things.

5              At 38, while you have worked, you have a bad

6    criminal history.  You are in category five.  And I believe

7    that that is something that the court, in terms of protecting

8    the community, has to pay attention to.

9              I am going to go along with what the government is

10   asking, for 162 months, and I am going to impose supervised

11   release of eight years.  I'm not imposing a fine because I

12   don't believe you can pay it.  Restitution isn't applicable.

13   There is a special assessment of $100.

14             There are conditions:

15             One, you shall abide by the standard conditions of

16   supervision.  Two, you shall not commit any crimes, federal,

17   state or local.  Three, you shall not possess any illegal

18   controlled substances.  Four, you shall cooperate in the

19   collection of DNA, as directed by the Probation Office.  Five,

20   you shall refrain from any unlawful use of a controlled

21   substance, and you shall submit to one drug test within 15

22   days of commencement of supervision, and at least two drug

23   tests thereafter, as directed by the Probation Officer, up to

24   a total of eight drug tests per month.

25             Number six, you shall not possess a firearm,

1  ammunition, destructive device or any other dangerous weapon.

2  Number seven, you shall participate in a substance abuse

3  program, which may include drug and alcohol testing, at the

4  discretion and direction of the Probation Office.  You are to

5  refrain from the possession and/or use of alcohol while

6  participating in the substance abuse treatment.

7        Number eight, you shall execute all financial

8  disclosure forms requested by the Probation Office, and

9  provide access to any requested financial information.  Number

10  nine, you shall submit your person, residence, place of

11  employment, or vehicle to a search conducted by the U.S.

12  Probation Office at a reasonable time and in a reasonable

13  manner, based upon reasonable suspicion of contraband or

14  evidence of a violation of a condition of supervision.

15  Failure to submit to such a search may be grounds for

16  revocation.  And you shall warn any other residents that the

17  premises may be subject to search pursuant to this condition.

18        Now, I am going to ask that you get educational,

19  vocational and drug treatment while you are incarcerated.  I

20  will ask for the 500-hour drug treatment.

21        Do either counsel know of any reason why the

22  sentence, as stated, should not be imposed?

23        MR. MUEHLECK:  The government does not, Your Honor.

24        MS. BARNARD:  Your Honor, we believe that what we

25  requested is sufficient to protect the public, and as much as

1  is necessary.

2          THE COURT:  And I appreciate that, Ms. Barnard, but

3  I have to look at your client in relation to other people with

4  the varying backgrounds for which they come in here, and your

5  client has very bad record, and I believe that has to go into

6  the calculation of what is necessary in order to protect the

7  public.  And I believe that he is in a category that requires

8  a sentence as stated.

9          Now, you may appeal your conviction if you believe

10 that your guilty plea was somehow unlawful, or involuntary, or

11 if there's some other fundamental defect in the proceeding

12 that was not waived by your guilty plea.  You have entered

13 into a plea which waives some of your rights to appeal the

14 sentence itself, and such waivers are generally enforceable;

15 but if you believe the waiver is unenforceable, you can

16 present that theory to the Appellate Court.

17         And with few exceptions, any notice of appeal must

18 be filed within ten days of judgment being entered in your

19 case.  If you are unable to pay the cost of an appeal, you may

20 apply for leave to appeal in forma pauperis.  If you so

21 request, the clerk of the court will prepare and file a notice

22 of appeal on your behalf.

23         Are there any counts to be dismissed, Mr. Muehleck?

24         MR. MUEHLECK:  Count Eight, move to dismiss in

25 accordance with the plea agreement, Your Honor.

1          THE COURT:  Okay, hearing no objection, Count Eight

2   is dismissed.

3          Yes, Mr. Hisashima?

4          THE CLERK:  I'm not sure, Judge, if I heard

5   correctly, but I think --

6          (Discussion off the record between

7           the court and the courtroom manager.)

8          THE COURT:  You are correct, Mr. Hisashima, it can

9   go all the way to ten --

10          MR. MUEHLECK:  Right.

11          THE COURT:  -- but I think eight ought to be

12   sufficient.  And if things go well, less time than that.

13          Okay, now, you did want to ask something about

14   location, Ms. Barnard?

15          MS. BARNARD:  Yes, Your Honor.

16          Mr. Arruiza's two youngest children are in the state

17   of North Dakota, Jaclyn and Isaac, and so he is asking to be

18   in the Sanstone facility --

19          THE COURT:  Say that again.

20          MS. BARNARD:  -- in Minnesota.  Sanstone,

21   S-A-N-S-T-O-N-E.

22          MR. MUEHLECK:  Minnesota, Your Honor.

23          THE COURT:  Sanstone?

24          MS. BARNARD:  That would be his first choice.

25          THE COURT:  Uh-huh.

```
 1              MS. BARNARD:  Second choice would be Pensacola,

 2   Florida.

 3              THE COURT:  What kind of facilities are these?

 4              MS. BARNARD:  Well, I know the Pensacola, Florida,

 5   is supposed to have an intensive substance abuse treatment

 6   program.

 7              THE COURT:  Well, I am talking about the level of

 8   security, etc.

 9              MS. BARNARD:  Oh.

10              MR. MUEHLECK:  I know it's an FCI in Sanstone.  I

11   don't know the level, Your Honor.

12              THE COURT:  Do you think he would be qualified for

13   an FCI?

14              MR. MUEHLECK:  I don't know, Your Honor.

15              THE COURT:  Okay.

16              And what about Pensacola, Ms. Barnard?  Do you know

17   whether it is a prison -- medium security, high security, low

18   security, a camp?

19              (Discussion off the record

20               between counsel and the defendant.)

21              THE COURT:  I'll look into that, but I don't think

22   it makes -- I'm not sure it makes sense to recommend him to a

23   camp with 162 months, and he is on his third drug conviction.

24   I don't think that's going to happen.

25              MS. BARNARD:  Okay.
```

1           And third choice would be in South Dakota, there's a

2    facility.

3           THE COURT:  Okay, I will look at that and -- I'm not

4    going to recommend him to a camp, because I don't think that

5    makes a lot of sense.  If the Minnesota one, Pensacola and

6    South Dakota have a medium, I'll recommend them, but otherwise

7    I am just going to go with the ones that are medium, because

8    it's just not realistic to think that he is going to get into

9    a low security with that kind of record.  He is a category

10   five.  And he's got violence, in terms of his background, so

11   there's no way they are going to put him in a camp, I don't

12   think.

13          MS. BARNARD:  Your Honor, he's also asking the court

14   to consider Leavenworth, Kansas.

15          MR. MUEHLECK:  -- (inaudible) --

16          THE COURT:  I can't hear you.

17          MR. MUEHLECK:  I'm not sure that there is anything

18   there, Judge, other than the disciplinary barracks for the

19   armed forces, U.S. Army disciplinary barracks.  And state

20   facilities at Leavenworth, but...

21          THE COURT:  You think it's for state procedures, as

22   opposed to federal?  Okay, I will look at this.  And, as I

23   said, I will do whatever is a medium -- of all those -- and

24   I'll try to do it in the order that he said, if there are

25   medium.  But you've got to be realistic about his criminal

1  history and the things he's been convicted of in the past.

2  It's just a waste of time to try to put him into something

3  that they are just not even going to consider.

4          Okay, if there's nothing further, then --

5          MR. MUEHLECK:  Nothing further by the United States.

6  Thank you, Your Honor.

7          THE COURT:  We stand in recess.

8          MS. BARNARD:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10          THE CLERK:  Please rise.

11          The court stands recessed subject to call.

12          (The hearing in the above-entitled

13          cause was concluded at 2:53 p.m.)

14                      - - -

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7                                  -ooOoo-

8              I, Stephen B. Platt, Official Court Reporter,

9    United States District Court, District of Hawaii, do hereby

10   certify that the foregoing is a true and correct transcript of

11   proceedings before the Honorable Helen Gillmor, United States

12   District Judge.

13

14

15

16

17

18

19

20                                  ___/s/   Stephen B. Platt___

21   MONDAY, FEBRUARY 13, 2006      STEPHEN B. PLATT, CSR NO. 248

22

23

24

25